1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11

EMAD TADROS, M.D.,

CASE NO. 11-CV-2622-LAB-POR

12

Plaintiff,

**ORDER ON MOTION TO
TRANSFER VENUE**

vs.

13
14

AMERICAN COLLEGE OF FORENSIC
EXAMINERS INSTITUTE; AMERICAN
COLLEGE OF FORENSIC EXAMINERS
INTERNATIONAL; and ROBERT
O'BLOCK,

15
16

Defendants.

17
18

Two motions are pending before the Court in this case: Defendants' motion to transfer

19

venue to the Central District of Missouri and Defendants' motion to dismiss.  The Court will

20

consider the venue motion first, and the motion to dismiss if necessary.

21

**I.    Background**

22

Emad Tadros, a psychiatrist at Scripps Mercy Behavioral Health Services in San

23

Diego, was involved in a custody dispute in San Diego Superior Court.  Dr. Tadros hired

24

Steven Doyne, a California-based psychologist, to conduct a custody evaluation, presumably

25

expecting that Dr. Doyne's evaluation would serve Dr. Tadros' cause.[1]  It turned out not to,

26
27

---

[1] The record is a little unclear on this point.  Dr. Tadros claims he hired Dr. Doyne
himself as a kind of expert witness.  (*See* FAC ¶ 15.)  Court records suggest, however, that
Dr. Tadros agreed that Dr. Doyne would serve as an evaluator in his custody dispute.  (*See*
Dkt. No 6-3, Ex. 1.)  If the latter is closer to the truth, Dr. Doyne's role was closer to that of

28

1   and Dr. Tadros sued Dr. Doyne for being incompetent and falsifying his credentials.  The
2   lawsuit was stricken on anti-SLAPP grounds, and Dr. Tadros was ordered to reimburse Dr.
3   Doyne for $80,000 in costs and approximately $6,000 in attorney's fees.  (*See* Dkt. No. 6-3,
4   Ex. 2.)  Dr. Tadros paid up.  (*See* FAC Ex. B.)

5          Dr. Doyne is a member of the American College of Forensic Examiners Institute, one
6   of the Defendants in this case, and he lists this membership among his professional
7   credentials.  After Dr. Tadros' lawsuit against Dr. Doyne failed, he sued ACFEI in Los
8   Angeles Superior Court, essentially for concealing its credentialing process and misleading
9   him and the San Diego Superior Court as to Dr. Doyne's true qualifications.  This lawsuit
10  was, without a doubt, a collateral attack on the judgment entered against Dr. Tadros in his
11  case against Dr. Doyne.  Dr. Tadros voluntarily dismissed this case on September 13, 2011.[2]

12         In October of 2011, ACFEI brought a defamation lawsuit against Dr. Tadros in state
13  court in Missouri.  Dr. Tadros removed the case to the Western District of Missouri, which
14  then dismissed it for lack of personal jurisdiction over Dr. Tadros.  (*See* Dkt. No. 18.)  The
15  court suggested that the Southern District of California, not the Western District of Missouri,
16  would be the appropriate venue for ACFEI's defamation lawsuit, but really the court's
17  decision had to do with its own lack of jurisdiction over Dr. Tadros.  Presumably, that is why
18  it dismissed the case without prejudice rather than transfer it here.  This is an important
19  point, because Dr. Tadros asks the Court to take judicial notice of the dismissal of ACFEI's
20  lawsuit in the Western District of Missouri as grounds for denying ACFEI's motion to transfer
21  this case *to* the Western District of Missouri.  That argument has less force considering that
22  the dismissal had more to do with jurisdiction than venue.

23         After receiving ACFEI's defamation lawsuit, Dr. Tadros again sued ACFEI, only now
24  in federal court in San Diego rather than state court in Los Angeles.  ACFEI argues that this
25  lawsuit is essentially the same lawsuit that Dr. Tadros previously filed against ACFEI.

26  _____
27  a neutral arbitrator than Dr. Tadros' own witness.

28          [2] This is the date given by Defendants, but as the Court reads the record Dr. Tadros
    contacted ACFEI's counsel about dismissing his case on July 21, 2011.  (FAC, Ex. C.)
    Perhaps it wasn't until September 13, 2011 that the dismissal was official.

1  Indeed, in this case, Dr. Tadros accuses ACFEI of having substandard credentialing
2  standards, of misrepresenting Dr. Doyne's actual qualifications, and of refusing Dr. Tadros'
3  many requests for information relating to Dr. Doyne's credentialing.

4  **II.     Jurisdiction**

5        While Defendants ask the Court to transfer this case to the Central District of
6  Missouri, they also casually assert that the Court lacks personal jurisdiction over them.  They
7  look past this issue, however, simply because "the more efficient procedure is to transfer this
8  action to the Central District of Missouri under 28 U.S.C. § 1404(a)."  (Dkt. No. 6-1 at 6.)
9  Defendants are right that *if* the Court lacks personal jurisdiction over the Defendants, it can
10 still transfer the case.  *See Fogarty v. USA Truck, Inc.*, 242 Fed.Appx. 152, 154 (5th Cir.
11 2007); *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 1011 (2d Cir. 2001).  If Defendants
12 are right, though, and Dr. Tadros "is a serial litigant, waging bizarre and multifaceted
13 campaign against imagined enemies," it would seem too much of a favor to Dr. Tadros to
14 help him prosecute this case elsewhere, rather than dismiss it for lack of jurisdiction and
15 force him to re-file. (*See* Dkt. No. 6-1 at 3.)  The Court therefore isn't inclined to look past
16 its jurisdiction over Defendants and straight to the question of transfer under 28 U.S.C. §
17 1404(a).

18       **A.     Jurisdictional Standards**

19       Personal jurisdiction over a defendant is proper if it complies with a state's long-arm
20 statute and constitutional due process standards.  *Fireman's Fund Ins. Co. v. Nat'l Bank of*
21 *Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996).   California's long-arm statute is co-
22 extensive with constitutional standards, however, so it is only the latter that matter here.  *See*
23 *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).   "For a court to exercise
24 personal jurisdiction over a nonresident defendant, that defendant must have at least
25 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not
26 offend traditional notions of fair play and substantial justice.'"  *Schwarzenegger v. Fred*
27 *Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*,
28 326 U.S. 310, 316 (1945)).

1    Personal jurisdiction may be either specific or general.  The Court will say something

2    about each.

3                    **1.      Specific Personal Jurisdiction**

4    Three conditions must be satisfied to trigger the Court's specific jurisdiction over a

5    non-resident defendant.

6                    (1) The non-resident defendant must purposefully direct his
      activities or consummate some transaction with the forum or
7                    resident thereof; or perform some act by which he purposefully
      avails himself of the privilege of conducting activities in the
8                    forum, thereby invoking the benefits and protections of its laws;

9                    (2) the claim must be one which arises out of or relates to the
      defendant's forum-related activities; and
10

11                   (3) the exercise of personal jurisdiction must comport with fair
      play and substantial justice, i.e., it must be reasonable.

12   *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205–06 (9th

13   Cir. 2006).

14   "Purposeful direction," the first condition[3], occurs where the defendant (1) commits

15   an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

16   defendant knows is likely to be suffered in the forum state.   *Id.* at 1206 (citing

17   *Schwarzenegger*, 374 F.3d at 802).  This test, which is traceable to the Supreme Court's

18   decision in *Calder v. Jones*, 465 U.S. 783 (1984), is an effects test that focuses on where

19   a defendant's acts were *felt*, rather than where they actually occurred.  *Yahoo! Inc.*, 433 F.3d

20   at 1206.  The "harm" required need not be the *brunt* of the harm of the defendant's acts.  To

21   the contrary, "[i]f a jurisdictionally sufficient amount of harm is suffered in the forum state,

22   it does not matter that even more harm might have been suffered in another state."  *Id.* at

23   1207.

24

25          [3] The Ninth Circuit distinguished between "purposeful availment" and "purposeful
     direction" in *Schwarzenegger*, 374 F.3d at 801.  An availment analysis, most often used in
26   suits sounding in contract, looks for "evidence of the defendant's actions in the forum, such
     as executing or performing a contract there."  *Id.* at 802.  A direction analysis, most often
27   used in suits sounding in tort, looks for "evidence of the defendant's action outside the forum
     state that are directed at the forum, such as the distribution in the forum state of goods
28   originating elsewhere."  *Id.* at 803.  The Court will use the "purposeful direction" analysis here
     because Dr. Tadros' claims are essentially fraud-based, and sound in tort.

1    The second condition — the claim must arise out of the defendant's forum-related
2    activities — simply means that the defendant's alleged activities must be the "but for" cause
3    of the claim. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir.
4    2000).

5    Comportment with fair play and substantial justice, the third condition, requires the
6    Court to consider several factors, including: (1) the extent of the defendant's purposeful
7    interjection into the forum state; (2) the burden on the defendant of defending in the forum;
8    (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum
9    state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the
10   controversy; (6) the importance of the forum to the plaintiff's interest in convenient and
11   effective relief, and (7) the existence of an alternative forum. *Id.* at 1088.  Each factor must
12   be considered, and none is dispositive. *Ziegler v. Indian River County*, 64 F.3d 470, 475 (9th
13   Cir. 1995).

14                    **2.    General Personal Jurisdiction**

15   General personal jurisdiction, on the other hand, arises when a defendant engages
16   in "continuous and systematic general business contacts that approximate physical presence
17   in the forum state." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir.
18   2011) (internal quotations and citations omitted).  "The standard is met only by 'continuous
19   corporate operations within a state [that are] thought so substantial and of such a nature as
20   to justify suit against [the defendant] on causes of action arising from dealings entirely
21   distinct from those activities.'" *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir.
22   2011) (quoting *Int'l Shoe*, 326 U.S. at 318)).  The standard for general jurisdiction "is an
23   exacting standard, as it should be, because a finding of general jurisdiction permits a
24   defendant to be haled into court in the forum state to answer for any of its activities
25   anywhere in the world." *Schwarzenegger*, 374 F.3d at 801.

26   **B.    Discussion**

27   The burden of establishing that jurisdiction exists falls on Dr. Tadros. *Rio Props., Inc.*
28   *v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  The burden isn't a heavy one,

1 though.  He need only make "a prima facie showing of jurisdictional facts to withstand the

2 motion to dismiss."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

3 Uncontroverted allegations in his complaint must be taken as true, and any conflicts between

4 the facts must be resolved in his favor.  *Rio Props.*, 284 F.3d at 1019.

5 It is hard to see how Dr. Tadros could ever establish that the Court has general

6 personal jurisdiction over the Defendants.  They are based in Springfield, Missouri, and Dr.

7 Tadros pleads no facts to establish that their operations in California, if any, are so

8 continuous and substantial that they can be said to be physically present here.  If this Court

9 can exercise personal jurisdiction over them, then, it will only be because Dr. Tadros' claims

10 actually arise out of Defendants' conduct in California such that specific jurisdiction exists.

11 But that's a substantial problem for Dr. Tadros.  Specific jurisdiction requires, first, that

12 Defendants committed some intentional act expressly aimed at California, and that caused

13 harm they knew was likely to be suffered in California.  *Yahoo! Inc.*, 433 F.3d at 1206.  In

14 defining the parties in this case, Dr. Tadros alleges that intentional act in the most conclusory

15 way possible, completely devoid of factual support.  He claims that ACFEI and ACFEII "does

16 business in the State of California . . . by marketing its products and or services to individuals

17 in said state."  (FAC ¶¶ 4–5.)  With respect to O'Block he alleges the exact same thing.

18 (FAC ¶ 6.)  A conclusory allegation that jurisdiction exists, however, falls far short of the

19 "prima facie showing of jurisdictional *facts*" that is required.  *See Pebble Beach Co.*, 453

20 F.3d at 1154 (emphasis added).  *See also Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937,

21 1949 (2009) (holding that a complaint must do more than "tender[ ] naked assertions devoid

22 of further factual enhancement"); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136,

23 1139 (9th Cir. 2003) (holding that in considering a motion to dismiss a court  need not

24 "necessarily assume the truth of legal conclusions merely because they are cast in the form

25 of factual allegations").

26 In the "Statement of Facts" in Dr. Tadros' complaint, Defendants' actual contacts with

27 California become clear, and they are far more limited than Dr. Tadros initially argues.  Dr.

28 Tadros claims that Defendants "have been and continue to be involved in credentialing

1  psychologists DIPLOMATE status, in the State of California and throughout the United

2  States issuing said credentials for a set fee, through its website http://www.acfei.com/."

3  (FAC ¶ 13.)  But this web-based credentialing doesn't constitute an intentional act aimed at

4  California.  To the contrary, "[t]hrough said website, a person may become a member filing

5  an online application and who pays the fee, simply claiming to have a degree and issued

6  points through a point system in the company."  (*Id.*)  In other words, Defendants, from

7  Missouri, operate a passive website that allows psychologists throughout the country to apply

8  for a membership credential that they then carry out into their respective fields, where

9  prospective patients may or may not attach significance to it.  While there may be purposeful

10  direction on the part of the *psychologists* like Dr. Doyne in the forums where they work, there

11  is no purposeful direction on the part of *Defendants* in those forums simply because

12  psychologists carry around a membership credential bestowed by them.

13       The analysis would be different if Dr. Tadros could allege that he read an

14  advertisement targeted at California trumpeting the virtues of ACFEI members and

15  recommending their services, or if he was personally contacted by an ACFEI representative

16  and sold on Dr. Doyne as a custody evaluator.  But that is not how Dr. Tadros tells it.  Dr.

17  Tadros alleges only that  "[i]n reliance on the defendants' credentials and DIPLOMATE

18  standing, [he] hired Steven Doyne for a project involving Custody Evaluation as an expert

19  witness." (FAC ¶ 15.)  He further alleges that "[i]n further reliance on the defendants'

20  credentialing, [he] paid Doyne $3,700 for a Custody Evaluation."  (*Id.*)  Thus, the only

21  meaningful connection between Defendants and California is that a California-based

22  psychologist happened to be a member of Defendants' organization and listed this among

23  his professional qualifications.   That simply isn't sufficient purposeful direction on the

24  Defendants' part to support the Court's exercise of personal jurisdiction over them.[4]

25

26       [4] In his opposition brief, Dr. Tadros alleges that Defendants "represented" Dr. Doyne
27  as being a competent custody evaluator and that O'Block "constantly does business in San Diego including but not limited to, giving marketing seminars and selling his products all over the state of California and in this district."  (Dkt. No. 8 at 3.)  The nature of this alleged
28  representation could constitute purposeful direction, but Dr. Tadros cites to his own affidavit in which he offers no additional factual details.  He doesn't explain who made the

1   For the reasons given above, the Court **DISMISSES** Dr. Tadros' complaint, **WITHOUT**

2   **PREJUDICE**, for lack of personal jurisdiction over the Defendants.

3   **III.    Venue**

4   To address, anyway, the parties' dispute over the proper venue for this case, the

5   Court finds good cause for transfer under 28 U.S.C. § 1404(a).

6   "For the convenience of parties and witnesses, in the interest of justice, a district court

7   may transfer any civil action to any other district or division where it might have been

8   brought."  28 U.S.C. § 1404(a).  The Ninth Circuit has identified multiple factors a district

9   court should take into consideration: (1) the plaintiff's choice of forum; (2) the respective

10  parties' contacts with the forum; (3) the contacts relating to the plaintiff's cause of action in

11  the chosen forum; (4) the difference between the costs of litigating in the  two forums; (5) the

12  availability of compulsory process to compel attendance of unwilling non-party witnesses;

13  and (6) the ease of access to sources of proof.  *Jones v. GNC Financing, Inc.*, 211 F.3d 495,

14  498–99 (9th Cir. 2000).  The weighing of these factors "involves subtle considerations and

15  is best left to the discretion of the trial judge."  *Commodity Futures Trading Comm'n v.*

16  *Savage*, 611 F.2d 270, 279 (9th Cir. 1979).[5]  A district may also consider certain so-called

17  "public" factors, such as the forums' respective familiarity with the applicable law, whether

18  there is any local interest in the case, and the relative court congestion in the forums.  *See*

19  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

20  The dispute over venue in this case comes down to just a handful of concerns.

21  Defendants are based in Missouri, and that's where all of their witnesses and records are.

22  Moreover, they argue, Dr. Tadros' choice of a forum is entitled to little weight, and Missouri

23  has a far greater interest in ACFEI's credibility as an organization.  Also, Dr. Tadros' claims

24  _____

25  representation, when it was made, what the substance of it was, or anything else.  As for the

26  vague description of O'Block's conduct in San Diego, Dr. Tadros doesn't link it to his actual
    claims, which is essential to establishing that *specific* personal jurisdiction exists.

27  [5] Typically, before going through the *Jones* factors, a district court would have to

28  consider whether a case could have been filed in the district to which the defendant seeks
    to have it transferred.  Here, there is no dispute that this case could have been filed in the
    Central District of Missouri.

arise mostly out of Defendants' credentialing procedures and their alleged failure to respond to Dr. Tadros' requests for information, which take or took place in Missouri.  Dr. Tadros, on the other hand, claims that his witnesses and exhibits are all located in southern California, and that his medical practice and weather-related asthma require that he stay in or close to San Diego.

First, the fact that Dr. Tadros maintains a medical practice in San Diego and has an easier time staying healthy in warmer climates aren't very relevant considerations under § 1404(a).  Second, Defendants are right about Dr. Tadros' choice of a forum.  The Ninth Circuit has held that a plaintiff's choice of forum is "entitled only to minimal consideration" where "the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *see also Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1157–58 (collecting cases in which "courts have given less deference to the plaintiff's choice of forum where the action has little connection with the chosen forum").  This obviously begs for an analysis of some other § 1404(a) factors — namely, the respective parties' contacts with the forum *and* the contacts relating to the cause of action in the chosen forum — but the Court is confident that the "operative facts" in this case are not so tied to the Southern District of California that the Court should presumptively honor Dr. Tadros' decision to sue Defendants here.  Again, Dr. Tadros' claims arise out of Defendants' credentialing standards and alleged refusal to furnish certain documents to Dr. Tadros, conduct that took place in Missouri.  (*See* Compl. ¶¶ 18–26.)

Third, many of Dr. Tadros' witnesses who are based in San Diego are *expert* witnesses, and their convenience is entitled to little consideration. *See Litton v. Avomex Inc.*, 2010 WL 160121 at *15 (N.D.N.Y. Jan. 14, 2010) ("If they are experts, their convenience is entitled to little or no weight in deciding a transfer motion and their deposition testimony could be videotaped if personal appearance at trial is impracticable."); *Lentz v. Eli Lily and Co.*, 464 F.Supp.2d 35, 37 (D. D.C. 2006) (noting that expert witnesses "by virtue of their role as paid experts must be prepared to travel to testify and are compensated for doing so").

1  Dr. Tadros also claims he will call witnesses who will testify "regarding their personal
2  experiences in the San Diego Court system with child custody evaluators credentialed by the
3  defendants." (Dkt. No. 8 at 6.) Such testimony, however, is not germane to Dr. Tadros'
4  specific claims against Defendants, which arise out of its credentialing standards as they
5  pertain to Dr. Doyne and their alleged refusal to provide Dr. Tadros with certain information.

6      While the Court will refrain from transferring this case to the Central District of
7  Missouri, it will advise Dr. Tadros that having considered the standard for transfer under
8  § 1404(a) it views Defendants' motion as meritorious.  If the Court were inclined to exercise
9  personal jurisdiction over the Defendants—and it is not—it would almost certainly transfer
10  this case to the Central District of Missouri.

11  **IV.    Conclusion**

12      The Court finds it lacks personal jurisdiction over the Defendants.  It understands that
13  this doesn't prevent it from transferring this case to the Central District of Missouri, anyway,
14  but it declines to do so in light of the history of this litigation.  This is Dr. Tadros' third lawsuit.
15  First he sued Dr. Doyne, and lost.  Then he sued ACFEI in state court, and voluntarily
16  dismissed his case.  Only after ACFEI sued Dr. Tadros for defamation did he file this lawsuit.
17  If Dr. Tadros truly believes it is in his best interest to continue to litigate with ACFEI, he may
18  re-file this case in some other district.  The Central District of Missouri appears to be the
19  most appropriate venue.

20

21      **IT IS SO ORDERED**.

22  DATED: March 29, 2012

23

24                          **HONORABLE LARRY ALAN BURNS**
                            United States District Judge
25

26

27

28